LEE (BANK OF UNITED STATES v.). See Cases Nos. 921 and 922.

LEE (BARNES v.). See Cases Nos. 1,017 and 1,018.

## Case No. 8,182.

LEE et al. v. BLANDY et al.

[2 Fish. Pat. Cas. 89; 1 Bond, 361; Merw. Pat. Inv. 425.] [1]

Circuit Court, S. D. Ohio. May, 1860.

PATENTS—EVIDENCE—CERTIFIED COPY OF ASSIGNMENT—LICENSE EVIDENCE OF UTILITY—TWO INVENTIONS, ONE PATENT—PATENTABILITY—MEANS DIFFERENT IN PRINCIPLE.

1. A certified copy of an assignment from the patent office is prima facie evidence of the genu-

---

[1] [Reported by Samuel S. Fisher, Esq.; reprinted in 1 Bond, 361; and here republished by permission.]

ineness of the original, and may be read in evidence to the jury.

[Cited in American Cable Ry. Co. v. Mayor, etc., of New York, 56 Fed. 152. Cited, but not followed, in Paine v. Trask, 5 C. C. A. 497, 56 Fed. 233. Disapproved in Mayor, etc., of New York v. American Cable Ry. Co, 9 C. C. A. 336, 60 Fed. 1,017.]

2. A former license from the plaintiff to the defendant to use the patented machine is evidence of the utility of the invention.

3. There can be no question but that there may be a claim for two inventions in the same patent, if they both relate to the same machine; and an action can be sustained for the infringement of either, when they are claimed as separate and distinct.

4. There are two classes or kinds of combination recognized by our patent laws which are properly the subjects of a patent. The first is one in which all the parts were before known, and where the sole merit of the invention consists in such an arrangement of them as to produce a new and useful result. The second is where some of the parts or elements of the combination are new, and their invention is claimed, but where they are used in combination with parts or elements that were known before. There is no infringement of a combination of the first class unless the defendant has used all the elements; but the second class may be infringed by the use of a part, if it is new and the invention of the patentee.

[Cited in Rowell v. Lindsay, 6 Fed. 293; Washburn & Moen Manuf'g Co. v. Griesche, 16 Fed. 671.]

5. The patentee is protected against any device which involves substantially the same principle as his own; but if another party produces the same result by means different in principle and application, then it is no infringement, for it would be absurd to say that the granting of a patent covers all possible ways of producing the same result.

6. Norcross claimed "the application to circular saw frames, of rocker boxes and a swing frame, as herein set forth, and suspending said frame in position by means of the driving belt, as above described, for the free and successful operation of the saw by the motion before mentioned." *Held*, that this was a claim for a single combination of rocker boxes, swing frame, and suspension of the frame by the driving belt, and not a claim for two separate improvements.

[Cited in Burke v. Partridge, 58 N. H. 353.]

This was an action on the case tried by Judges McLEAN and LEAVITT and a jury, to recover damages for the alleged infringement of letters patent [No. 7,027] for an "improvement in hanging circular saws," granted to Nicholas G. Norcross January 15, 1850, and assigned to plaintiffs March 28, 1856. In his specification the inventor says: "The nature of my invention consists in suspending the saw so that it can have lateral vibration, and when thrown out of line will recover itself by the action of the driving belt, and the arrangement of the parts by which it is sustained, while at the same time the arbor has no lateral play in its boxes, and is made to fit close with shoulders, to prevent the oil from getting out while in operation —a matter of great importance when the motion is so rapid as in circular saws. This is effected by supporting the boxes in which the journals of the arbor run upon standards, to which said boxes are jointed, and which

are themselves jointed to the foundation to which they are attached, so that the arbor is kept horizontal, while it is allowed a sufficient lateral play, the motion being a curved line, and of course, inclining downward as the tops of the standards recede either way from a vertical position. To sustain the frame upright, the driving belt passes around the pulley on the arbor, up over a driving pulley above, and thus holds the frame up to the proper point, so that the saw is actually suspended by the belt, while it is kept steady and made to move properly by the frame below. By this arrangement it will be seen, that while the slightest force will cause the arbor to deviate a little laterally the constant tendency of the reacting agent is to bring it back to place again. By this means I am enabled to use a much thinner saw, and save material and power to a great degree. * * * What I claim as my invention and desire to secure by letters patent, is the application to circular saw frames, of rocker boxes and a swing frame, as herein set forth, and suspending said frame in position by means of the driving belt, as above described, for the free and successful operation of the saw by the motion before mentioned." The plaintiffs [Rufus S. Lee and William D. Leavitt] claimed that these specifications described in effect two distinct improvements in the circular saw. First, permitting the lateral motion of the saw mandril, or arbor, by the device of the rocker boxes and swinging frame, and second, restoring the saw to line by the elasticity of the belt acting as a reacting agent. The defendants [Henry Blandy and Frederick J. L. Blandy] gave the saw arbor end play in its boxes, and did not use the swing frame, but, in order to restore the saw to line, they placed a metallic spring in a box at the end of the mandril, so that when, from any cause, the mandril was deflected, the spring would throw it back to place again. The plaintiffs claimed that the elasticity of this metallic spring in the defendants' machine was an equivalent for the elasticity of the belt in the plaintiffs', in other words, that both were in effect springs, and that the defendants had thus infringed the plaintiffs' patent by using their second improvement.

One or two preliminary rulings were of interest. The plaintiffs offered a copy of the assignment of Nicholas G. Norcross to them, of his rights, under the patent, for the state of Ohio, with a certificate of the patent office, showing it to be a copy of the record of what purported to be the original assignment. The defendants objected, first, because there was no proof of the validity of the original assignment, and second, because the plaintiffs must be presumed to be in possession of the original assignment to them, and, therefore, a copy was not the best evidence. THE COURT overruled the objection, and held that the certified copy was

prima facie evidence of the genuineness of the original, and permitted it to go to the jury.

At a later stage of the case, THE COURT held that a contract which the defendants had formerly made with the plaintiffs, for the right to use their machine, might go to the jury as evidence of the utility of the Norcross invention.

G. M. Lee and S. S. Fisher, for plaintiffs.

C. D. Coffin and A. G. Thurman, for defendants.

Before McLEAN, Circuit Justice, and LEAVITT, District Judge.

LEAVITT, District Judge (charging jury). On January 15, 1850, a patent was issued to Nicholas G. Norcross. The improvement for which he received the patent is designated "an improvement in hanging circular saws." On March 28, 1856, Norcross, the patentee, assigned his rights for the state of Ohio, and eight other states, to the plaintiffs, Lee and Leavitt.

This suit is brought for an alleged infringement of the plaintiffs' right, in the making and selling of a number of circular saws, which, the plaintiffs claim, embodied a material element of the improvement patented to Norcross. A great and important question, involving the construction of the patent, has been made and argued with great force. That is a question exclusively for the consideration of the court, and however anxious I might feel to avoid that legal proposition, and to present the whole case to the consideration of the jury, the position I occupy, and the duties that devolve upon me require me, to deliver an opinion upon it.

On the part of the plaintiffs, it is contended that Norcross' invention consists of two separate improvements: First, the use and application of rocker boxes and a swinging frame to produce lateral motion of the saw. Second, the action of the belt by the force of elasticity, in connection with the pulleys, to restore the saw to line when deflected from its right course.

These are claimed by the plaintiffs' counsel as separate and independent improvements, and as being both covered by the claim of Norcross. They claim that defendants have infringed the Norcross patent by the use of the spiral spring in the end of the mandril, the office of which is to restore the saw to line, which spring is claimed to be a mechanical equivalent for the belt in connection with the rocker boxes and swinging frame.

The defendants' counsel insist: First, that the invention of Norcross, as set out in the patent, is a combination of rocker boxes, swinging frame, and suspension of the frame by the driving belt; they insist that these elements are claimed as an entire structure or machine, and that there can be no infringement unless the defendants have used all the parts or elements of it. They do not use the swinging frame or rocker boxes, and therefore do not infringe. And secondly, they insist that their metallic spring is not the same or an equivalent for the belt and its connections in the Norcross invention.

The latter question, that of identity of the two inventions, is, of course, a question for the jury, and I do not propose, in this place, to say anything upon it, but will ask your attention to the propositions of law in regard to the construction of the claim of this patent.

There can be no question but that there may be a claim for two inventions in the same patent, if they both relate to the same machine or structure; and an action can be sustained for the infringement of either one or the other of these separate inventions, where claimed as separate and distinct in their character. There can be no doubt, if one of these be infringed it is properly a subject for an action. The question, in this case, is, whether the claim is of this character—whether it is, in fact, a claim for two distinct and independent inventions, or whether it is a claim for a combination. If a combination, what is the character of that combination?

There are two classes or kinds of combinations recognized by our patent laws which are properly the subject of a patent. The first may be defined to be one in which all the parts were before known, and where the sole merit of the invention consists in such an arrangement of them as to produce a new and useful result, or where, by adopting parts of a machine which may have been known for ages, an inventor has succeeded in making such an arrangement of them as that they produce a result never before attained, and have, in that point of view, the merit of originality, and are, therefore, patentable.

There is another class of combinations, where some of the parts or elements of the combination are new, and their invention claimed, but where they are used in combination with parts or elements that were known before.

It is well settled that a patent may be obtained for the first class of combinations, but it is a principle well recognized that there is no infringement unless the party has used all the elements. If the combination consists of A, B, C, three mechanical structures long known, and if the party sued has only the parts B, C, and not A, he is not regarded as an infringer; he must use all to subject himself to liability.

If the combination have the other character to which I have referred, being, to a certain extent, new, but embracing some old parts or elements, then there is an infringement by the use of that part which is new and the invention of the patentee. In the present case, there is no claim or pretense that these defendants use the swinging frame and rocker boxes in their saw mill; and, therefore, if

the Norcross claim is to be viewed as for a combination, without anything new, it would result that defendants have not infringed by their method of producing lateral motion, and of restoring the saw by the use of the spiral spring.

The language of the patent seems, in my judgment, to contemplate a machine made up of a combination of different parts, all necessary to its harmonious working, as a unit. It seems hardly possible to resist the conclusion, that the machine was arranged and constructed so as to produce lateral motion, and the restoration of the saw into line in case of divergence. There is no intimation that any one of the appliances are separate and independent inventions. I am obliged to state as my view of the proper construction of this patent, that it claims a structure or machine in combination, or composed of a combination of different elements. There is certainly great force in the idea that the patentee could not have claimed the belt per se as a novelty, and that it could only be claimed in combination with the rocker boxes and swinging frame, for it is only in connection with them that the belt could act as a restoring agent; and this would seem sufficient to show that it was not contemplated as a separate invention, but as one of the parts of the entire combination.

These are the views I have felt it my duty to give the jury upon the question of combination. I have regretted somewhat that I have been brought to this conclusion, as I am very desirous, independent of any legal question of this kind, growing out of this specification, that the jury should take the entire case upon the facts, untrammeled by anything of this kind, and pass upon the merits, and I should be glad that it might be understood, even now, that the jury should take this case and consider it upon the question of identity, infringement and utility. I do not understand it to be claimed that, except in the use of the equivalent of the spring for the belt, there is any infringement.

Upon the question of infringement I had not intended to say a word. The evidence has been full upon all questions of fact, and has been extensively commented upon by counsel. I shall not, therefore, go into the consideration of what has or has not been shown by the evidence.

Upon the question of identity I will, however, remark that it is not a question as to the precise form or size: the point is, whether the principle of the two things is the same or not. The law is that the patentee is protected against any other device which involves substantially the same principle. But if another party produces the same result by means different in principle and application, then it is no infringement, for it would be absurd to say that the granting of a patent covers all possible ways of producing the same result. Such is not the intention and spirit of the patent law. On the subject of

the identity of these two contrivances, I need not extend my remarks. The jury have had the benefit of models and the testimony of witnesses, besides the explanation of counsel. They are entirely posted upon the character and features of the two inventions. In regard to the evidence of witnesses upon that point there is diversity. A number of intelligent witnesses, some of them experts, say that the contrivances are, in principle, the same; another large number, equally intelligent and capable, say they consider the two different in their action. It will be for the jury to reconcile the evidence, and come to such result as they shall think proper.

Some question has also been made in the course of the case upon the question of utility. Some evidence has been adduced to show that the lateral motion provided for, is really of no utility. On this subject I have only to remark, that the general doctrine is undoubtedly as stated, that there is a presumption arising from the patent itself, that the invention is of some degree of utility; but that it is not conclusive, and the other party may show that it is useless and worthless. You will remember upon this point there was some diversity of opinion. Some of the witnesses have stated not only that they considered it of no benefit, but a disadvantage. I would state that, if the jury find a substantial identity, it does not lie in the mouths of the defendants to say that the machine they use is of no utility, that is, upon the hypothesis that if there is identity, it does not become them to say that what they have appropriated is of no utility, as the mere fact that they have appropriated it, is evidence that they regarded it as of utility.

The jury found a verdict for the defendants.